THE PHILADELPHIA.

THE BALTIMORE.

PARMENTER v. MURPHY (two cases).

SAME v. LAMPER et al.

(Circuit Court of Appeals, First Circuit. August 19, 1896.)

Nos. 152, 153, and 154.

MARITIME LIENS—SUPPLIES—PRESUMPTIONS.

Supplies of coal and water furnished at the wharf to foreign steamers at their port of touch on regular round trips, in quantities needed for daily use, in the presence of the master, and while he is in control, and in the absence of both owner and charterers, will be presumed, prima facie, to have been furnished with the acquiescence of the master, so as to bind the vessel, even though the order was in fact sometimes given by the engineer, or by a subordinate agent, exercising his duties at the wharf, under the eye of the master.

Appeals from the District Court of the United States for the District of Massachusetts.

Eugene P. Carver and Edward E. Blodgett, for appellant.

Frederic Dodge and Edward S. Dodge, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge.    These three cases are submitted to us on a common record.    They are appeals taken by the owner of the vessels from decrees on libels against two coasting steamers, making short trips out of Boston, for ordinary supplies of coal and water. The assignments of errors are the same in all.    The only alleged errors which we have occasion to consider are the third, fourth, and fifth, as follows:

"Third. That the court should have found that the goods declared on were not furnished on the credit of the vessel, but solely upon the credit of the charterers. Fourth. That the court should have found that the libelant had notice that the vessel was under charter, and the supplies were furnished at the expense of the charterer. Fifth. That the court should have found that the goods were furnished solely upon the order of the charterers, and not upon the order of the master or owners of the vessel."

If we found any of these in favor of the owner of the steamers libeled, we would be required to consider some questions of law consequent on such findings.    As we find them all in favor of the libelants, we do not perceive that any question of law arises.

The appellant has also pressed on us two other propositions,— one of laches on the part of the libelants, and the other a claim that there is no proof that the coal furnished the Philadelphia in one of the suits ever went aboard the steamer.    These objections were not taken in the district court, nor are they especially covered by any assignment of errors; and therefore they cannot be considered by us, under the rules which we have many times stated.

The learned judge of the district court found that the supplies, in all of the suits, were furnished on the credit of the respective vessels, and that the libelants had no notice that the vessels were under charters in which it was agreed that the supplies should be furnished at the expense of the charterers.    He also found that the supplies were furnished partly on the orders of the master, and partly on the orders of the charterers.    It will be noticed that the fourth alleged error is not stated so precisely as the finding in the opinion of the court below, but it undoubtedly had reference to that finding, and was intended to be based on it.    The issues which we have stated, as they exist here, raise only pure questions of fact; and the determination of them involves only the weighing of testimony of witnesses which was apparently contradictory, and was supported on the one side or the other, more or less, by the surrounding circumstances. It is not within the range of possibilities that other suits will arise in which the testimony and the circumstances will be substantially the same, so that there would be no advantage in loading our opinion and the reports with a discussion of the details of the evidence.

We are entirely satisfied that all the supplies were furnished on the credit of the respective vessels, in the sense in which that expression is commonly used in proceedings of this character.    We are also satisfied that the owner of the vessels has not established that any of the libelants had the notice spoken of in the opinion of the

learned judge of the district court, or in the assignments of errors touching the matter. Therefore, inasmuch as the steamers were "foreign" vessels, in the sense in which that word is used in this connection, and as the supplies were the reasonable hand to hand quantities of coal and water needed for their use in short coastwise trips, and were actually consumed aboard, no question of law would arise if all the supplies were furnished on the orders of the masters of the vessels, and not, as stated by the district court, partly on the orders of the masters, and partly on the orders of the charterers. The supplies were delivered to the steamers libeled, at their respective wharfs at their ports of touch, on their round trips, in small quantities, as needed for daily use, in the presence of the masters of the respective steamers, and while they were in control of them, and in the absence of both their owner and their charterers. Therefore the transactions were in the usual course of business by which ordinary supplies are commonly furnished to vessels by the order of the master, and away from the port where the owners reside. It would be intolerable, and entirely contrary to the practice of the courts, to hold that persons furnishing vessels such supplies in small quantities, to meet the requirements of the law for effectuating a lien, must prove express orders by the master. It is prima facie sufficient in such cases that the supplies are of the character which we have described, and come aboard under such circumstances that the master can properly be assumed to acquiesce in their purchase and reception; and this without reference to whether or not the immediate orders for them came from some person occupying a subordinate position. The supplies having thus been furnished under such circumstances that we ought to presume that they were obtained on the express or implied orders of the master, the parties furnishing them were also entitled, at the time the supplies were furnished, to the benefit of the same presumption; and, if the owner of either steamer would rebut the case as thus made, he must show that the orders came from the charterers themselves, and that the parties furnishing the supplies knew that they so came, and thus knew that the course of business was other than that apparent on the face of the transactions, and other than that which they had a right to presume it to be. The record fails to furnish any proof of this character.

The coal furnished by Murphy to each of the steamers was, as already said, put on the wharf at a port of touch, which was Beverly. The proof is that the first order was given expressly by the master of one of the steamers; but the usual course of business was for each engineer, on arrival, to give an order for the amount of coal to be put down on the wharf, needed for the steamer on her return. There is nothing in the record to show that the engineer, in these transactions, was acting on the special orders of the charterers. Undoubtedly for this purpose the engineer stood qua master to a certain extent; but, whether he did or not, Murphy had a right to understand that the coal, being furnished under the circumstances we have described, and being also received aboard the steamers, was thus furnished and received at the request or with the acquiescence—which amounts to a request—of whomsoever was then in command for whatever voyage was being run out. It is stated that sometimes, when the boats

got away from the wharf and forgot to order, a telephone message would be received from Boston to make good the omission; but precisely from whom the messages came does not appear, and, if it did, the incidental provision for extraordinary circumstances of this character cannot change the effect of the general course of business which we have pointed out. The most it could accomplish would be to show that whosoever was in charge of the office at Boston, even if the messages did come from any other person than the engineer or the master, approved and ratified the course of business adopted by the engineer under the eye of the master, and with his acquiescence. An attempt was made to show by the engineer of one of the steamers that he delivered Murphy written orders from the charterers for the coal, but the proof on this point apparently failed. It was clearly inconsistent with the course of business with reference to the coal furnished on like trips to the other steamer, or by the other libelant, and it was not insisted on at the argument before us. If there were any, we are satisfied that they occurred later in the season; that is to say, after the 23d or 24th of August, at which time Murphy admits that he was told by the charterers the steamers were under charter, and after which Murphy insisted on cash payments for his coal from day to day as he furnished it. These considerations effectually dispose of the two cases in which Murphy was the libelant, with the same results as were reached in the district court.

In the Lamper case, coal and water were supplied one of the steamers at Lynn; and in all respects the circumstances were the same as in Murphy's cases, except it appears that the orders were mainly received from one Robinson, who is described as the "agent at that end of the line." It is a fact of which the court must take notice that a person described as an agent, in the way in which Mr. Robinson is described, having duties assigned to him at a port of touch, like Lynn in this case, has no independent authority or duties remote from the wharf used by the steamers of the line, but exercises them at that wharf, under the eye of the master. There is no evidence in the record tending to show that Robinson was a person of superior authority, or in any way empowered to purchase coal or water as a general representative of the line, the steamers, or the charterers, or that he had any special authority from the charterers themselves. Therefore, so far as the record shows, these libelants had the same right which Murphy had to rely on the facts that the coal and water were delivered and received aboard the steamer at her wharf at the port of touch with the knowledge of whosoever was in her command. In other words, with reference to all of the cases under consideration there is nothing which affects the presumption arising from the fact that these were ordinary supplies, taken aboard the steamers at ports of touch with the knowledge and acquiescence of the master, and therefore by his presumed request and direction. We therefore see nothing which requires us to consider what principles of law or presumptions would apply if the evidence showed that the orders for the coal and water came from the charterers themselves to the libelants, with the knowledge of the libelants, so that they were furnished on the strength of such orders, and not in the usual and ordinary course of dealing at ports of touch.

In each case there will be a judgment as follows: The decree of the district court is affirmed, with interest, and with the costs of this court against the appellant.