REGISTER'S FEES IN BANKRUPTCY CASES. See "Costs and Fees," Appendix to this series.

REGISTER'S FEES IN BANKRUPTCY CASES. See "Fees for Registering," Appendix to this series.

---

## Case No. 11,665.

### The REGULATOR.

[1 Hask. 17.] [1]

District Court, D. Maine. Sept., 1866.

SHIPPING—FOREIGN VESSEL—MARITIME LIENS—SUPPLIES—SHIP'S HUSBAND.

1. A domestic vessel is a foreign vessel in all domestic ports outside of the state where she is owned and registered, or enrolled.

2. The master of a foreign vessel, in case of necessity, may bind himself and the owners personally, and subject his vessel to a maritime lien for supplies and repairs without an express hypothecation, when he obtains them on the credit of the vessel.

3. A part-owner, present in a state other than where his vessel belongs and where the other owners do not reside, there superintending the repair and taking general charge of his vessel, does not act as master, but as managing owner and ship's-husband.

4. A maritime lien is not implied upon a foreign vessel for supplies and repairs ordered by the owner, and not obtained and furnished upon the credit of the vessel.

5. Semble. Such supplies and repairs, necessarily obtained and furnished upon the credit of the vessel, needed for her preservation, or to enable her to proceed on her voyage, create a maritime lien upon her; and the necessity for credit to the vessel is presumed, when they are ordered by the master, and that fact is evidence of the necessity for the supplies, etc., furnished. The Grapeshot, 9 Wall. [76 U. S.] 129; The Guy, Id. 758; The Kalorama, 10 Wall. [77 U. S.] 204; Insurance Co. v. Baring, 20 Wall. [87 U. S.] 159.

In admiralty. Libel in rem to enforce a maritime lien upon the steamer Regulator for supplies and materials, necessaries furnished at the request of the owners at the port of Portland, Maine. Charles Spear of Boston, Massachusetts, made claim and answer admitting that the vessel hailed from Boston, and that having been laid up for the winter at Portland without master or crew, he having the care and management of her, and being present in Portland superintending her repairs, ordered the supplies and materials furnished by the libellants. It appeared that the facts were well known to the libellants, and that they charged the supplies and materials to the vessel, but that the owner, who ordered them, supposed that they were furnished on his credit.

Almon A. Strout and George F. Shepley, for libellant.

John H. Williams and William L. Putnam, for claimant.

FOX, District Judge. It is claimed that a lien does not exist against the vessel for these supplies, first, because the managing owner was present and procured the supplies; and secondly, because it does not appear that a necessity existed for the supplies, and that they could be obtained only upon the credit of the vessel.

The vessel was enrolled in Boston, and all the owners resided in Massachusetts at the time the supplies were furnished, and there can be no doubt that within the ordinary meaning of the phrase as understood by courts of admiralty in the United States, this steamer must be deemed a foreign vessel when in the port of Portland, subject to all the burdens and liabilities of foreign vessels in matters of this nature.

By the law of England, the master of a ship has not power to create a lien on a vessel as security for the payment of re-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

pairs and supplies obtained in a foreign port, save by a bottomry bond; but such is not the maritime law of the United States as recognized by the supreme court of the United States. It has been decided by that tribunal, *that the master of a vessel of the United States*, being in a foreign port, has power in case of necessity to hypothecate the vessel and also to bind himself and the owners personally for repairs and supplies, and he does so without any express hypothecation, when in case of necessity, he obtains them on the credit of the vessel without a bottomry bond, and this I understand to be the ancient and general maritime law of the commercial world.

Each party admits that these supplies were procured by Gray, the painter, upon the order of Spear, and the libellants contend, that at that time, there being no other master of the steamer, Spear must be understood as acting in the capacity of master in ordering these supplies, and thereby bound the vessel for them. It therefore becomes highly important to determine what was done by Spear, and whether in what he did, he acted as a master. It appears that the steamer at this time was laid up for the winter season in Portland, that her former master and crew were discharged, and that Spear was one of the resident owners in Boston, that he came to Portland, was here during the greater part of the time the vessel was undergoing these repairs, having the general charge and superintendence of them, none of the other owners being present; that the larger portion of the expenditures upon the boat were made before the first of March, when she commenced her trips anew to the Penobscot under the charge of a master other than Spear; that she afterwards was in the employ of the government, and about May third returned to Portland, when as the answer alleges, the master left her and went home, and Spear came down again to Portland, took charge of the vessel directing further repairs, and ordering from the libellants such further material as was necessary. In so conducting, I cannot consider that Spear was acting as a master of the vessel, he was rather the ship's-husband, or managing owner, and all that he did can much better be referred to that capacity, rather than to that of a master. When the duties of a master were to be discharged, when the vessel needed a master and was ready for her voyage, *a master* is then *engaged*, he assumes the command and acts as master of the boat until it is thought expedient to make further repairs, then the master retires, and Spear, as managing owner, returns to Portland and takes the charge and direction of such repairs. All these circumstances compel me to conclude that in ordering these supplies, I must view Spear not as a master, but as an owner, and that at the time, it was understood by the libellants that the boat was without a master, that Spear was one of the owners superintending the repairs. In fact, the libel alleges that the supplies were ordered by the owners.

Is a maritime lien implied for necessary supplies furnished a vessel in a foreign port, by the direction of a managing owner, there present superintending her repairs and ordering the supplies?

In The St. Jago, 9 Wheat. [22 U. S.] 409, Mr. Justice Johnson, speaking for the supreme court of the United States of claims of material men, says, "It is not in the power of any one but the ship-master, not the owner himself, to give these implied liens on the vessel, and in every case the last lien given will supersede the preceding. * * * The vessel must get on; this is the consideration that controls every other. For these purposes, the law maritime attaches the power of pledging or subjecting the vessel to material-men to the office of ship-master, and considers the owner as vesting him with those powers by the mere act of constituting him ship-master. The necessities of commerce require, that when remote from his owner, he should be able to subject his owner's property to that liability, without which it is reasonable to suppose he will not be able to pursue his owner's interests. But when the owner is present, the reason ceases, and the contract is inferred to be with the owner himself, on his ordinary responsibility, without a view to the vessel, as the fund from which compensation is to be derived."

Chief Justice Taney, in the case of Sarchet v. The Davis [Case No. 12,357], recognized the same principle, that no implied lien was created by the general maritime law, when the owner was present with his vessel in a foreign port, and makes the contract for the supplies. He says, "That in the case of the St. Jago, it was decided, that the lien given by the general maritime law is confined to contracts made by the ship-master in a foreign port, in the absence of the owner, and that no lien is implied when the owner himself is present and makes the contract, and that in such case, the work and materials are presumed to be furnished, not on the credit of the vessel, but on that of the owner."

In Thomas v. Osborn, 19 How. [60 U. S.] 22, Mr. Justice Curtis, speaking for the majority of the supreme court, says, "It is true, this implied lien does not exist in a place where the owner is present." Chief Justice Taney, on page 43, says, "But if the owner is present and the supplies are furnished to him, it is equally well established that the credit is presumed to have been given to him personally, and no lien on the vessel is implied."

Conkling (1 Conk. Adm. 80) states this principle as follows: "To guard against possible misapprehension, it is proper to state, that no lien is ever implied from contracts made by the owner in person. It is only those contracts which the master enters into in his character of master that specifically bind the ship, or affect it by way of lien or privilege in favor of the creditor. * * * When the

owner is present and acting in his own behalf as such, the contract is presumed to be made with him on his ordinary responsibility, without a view to the vessel as a fund from which compensation is to be derived."

I have endeavored to ascertain why a lien is implied on the vessel, when the supplies are obtained by the ship-master in a foreign port, and not implied, when ordered by the owner himself at the same port. It seems to me the distinction must have originated from the fact, that under the ancient maritime usages and customs, the master could not, in the proper sense of the word, bind the owners personally, because they could always withdraw themselves from their responsibility by abandoning ship and freight. This principle is fully explained and commented on by Judge Ware, with his customary clearness and learning, in the case of The Phœbe [Case No. 11,064]. Under such circumstances, as the personal credit of the owners would not be involved for the supplies, there would seem to arise, from the very necessity of the case, a lien on the vessel for the necessary supplies furnished her on the master's order, with which to prosecute her voyage; the vessel must move on; she would be frequently in need of supplies, and the master would find himself in a foreign port, without credit or means to procure them, excepting by bottomry of the vessel, which would be vexatious and exceedingly expensive. Sometimes only a small amount of supplies would be necessary; and the great interests of commerce were therefore certainly promoted by allowing a lien to be implied for them upon the vessel, when so furnished at the request of the master. These necessities could not exist to so great an extent, when the owner was present with his vessel; he could bind himself, could use his personal credit, could not only bind his vessel by express hypothecation, but by being a party to the contract render himself personally accountable for the supplies, and ordinarily would be presumed to be so situated as to make such a bargain, and give such security for his liability as he should think expedient; from this I think the difference originated, and it has continued for so great a length of time, and been so often acknowledged by our courts of admiralty, that I must recognize it as binding and obligatory upon me in the decision of the present cause.

It is contended by the libellants, that they delivered the goods on the credit of the steamer, charging them to her, and that they would not have delivered them on the credit of the owner. It is not pretended that they informed the managing owner before the goods were delivered by them, that they should credit the vessel, and the owner in his answer alleges, that he did not intend to create any such lien, but understood that the goods were delivered on the credit of the owners. There seems therefore to have been a misunderstanding between the parties, one supposing he was crediting the steamer, and the other that the credit was given to the owners; under these circumstances it appears to me that the general principle of law must control, and that as nothing was said between the parties as to the credit, the law will infer that they were delivered on the credit of the party present and ordering the supplies.

It has been suggested, that Spear was only a part-owner of the steamer, and that the principle relating to supplies furnished to a vessel in a foreign port, upon the order of the owner there present, does not apply where it is a part-owner, who procures the supplies, and who may have but a small interest in the vessel.

It may be, that a distinction should be drawn between the two cases, but if so, I should not consider it applicable in the present case, as I consider Spear was authorized to act, in making the repairs, as managing owner, and bound his co-owners by his contracts in their behalf.

I am therefore of opinion that under the circumstances of the present case, there was no implied lien on the steamer for these supplies, and that the libel cannot be sustained. This view of the case renders it unnecessary for me to determine the other point. It is sufficient for me to say, that although I consider these supplies were necessary for the vessel, within the meaning of the admiralty law, I have great doubt, whether under the authority of Pratt v. Reed, 19 How. [60 U. S.] 359, the evidence was sufficient to establish the fact, that they could be obtained only by a credit on the vessel, that a necessity to impose a lien on the vessel for them was made out. It is true the libellants were unwilling to credit the owners, but it does not appear that they communicated this to the owners, or that other parties would not have furnished the articles on the owners' credit. It has been decided by the district court of the United States in New York (1 Par. Mar. L. 491) that it must be proved that the owners had not funds, or credit, on which to procure the supplies, except the credit of the vessel.

Libel dismissed with costs.