THE SARATOGA et al.

(District Court, D. Rhode Island. February 21, 1900.)

Nos. 1,044–1,057.

1. MARITIME LIENS—SUPPLIES FURNISHED ON CONTRACT WITH OWNER.
    By the maritime law no lien for labor or supplies furnished a vessel is presumed to arise on a contract made with the owner, and to create a lien in such case an agreement or mutual understanding to that effect is necessary, and must be proved; and the rule is not different where the person contracted with is known to be a partner in the firm which owns the vessel, because he is also acting in the capacity of master, it being within the power of the person furnishing the labor or supplies to require an agreement for a lien, if he intends to rely upon the credit of the vessel.[1]

2. SAME—TOWAGE SERVICES RENDERED UNDER CONTRACT.
    Where a tug which had been employed to render general towing services for a partnership for an agreed sum per month was sent by the firm on a special service to bring a general tow, without any agreement as to what should constitute such tow, for which service an agreed price was to be paid, such service must be deemed to have been rendered on the personal credit of the contractors, and not to create a lien on a dredge, which, with two scows and other dredging material, made up the tow, for the whole or any part of the towage.

3. SAME.
    A tug, contracting with the owners of a dredging plant, consisting of a dredge and scows, to render general towing services, in connection with the dredging operations, for a stipulated sum monthly, is not entitled to a lien therefor on the dredge.

4. SAME.
    A tug is entitled to a lien upon a dredge for casual towing services, rendered on request of those operating the dredge, in removing loaded scows to the dumping grounds at different times, when such service could not be performed by the tugs in regular attendance.

5. SAME—SERVICES AS INSPECTOR OF DREDGING.
    One employed by a contractor for dredging as an inspector, at a fixed salary per day, pursuant to a state law requiring the work to be done under inspection, is not entitled to a maritime lien for his services upon a dredge owned and used by the contractor for the amount due him for services.

In Admiralty. On distribution of the proceeds of vessels sold in proceedings to enforce liens.

Dennis H. Sheahan, for Dennis Cronin.

William R. Tillinghast, for James A. Potter & Co.

Dexter B. Potter, for Providence Dry Dock Co.

Theodore F. Greene, for Providence Coal Co.

John D. Thurston, for Fuller Iron Works.

De Laguel Berier, for James E. Walsh and Grafton N. Milliken.

A. C. Matteson, for Providence Steamboat Co., Charles Pay & Co., W. P. Knickerbocker, Walter S. Taft, and Thomas Martin and others.

BROWN, District Judge. The rights of various libelants to share in the proceeds of a sale of the steam dredge Saratoga and of two scows are in question.

_____
[1] As to maritime liens for supplies and services, see note to The George Dumois, 15 C. C. A. 679.

The claims of the Providence Coal Company, the Providence Dry-Dock & Marine Railway Company, and James A. Potter must be disallowed, under the rules of law stated by the circuit court of appeals of this circuit in its opinion in The Iris (Feb. 2, 1900) 100 Fed. 104, wherein it was said:

"By the maritime law no lien for supplies or labor furnished a vessel is presumed to arise on a contract made by the owner, and proof is required that the minds of the parties to the contract met on a common understanding that such a lien should be created. Neither is it sufficient that the party who furnished the labor or supplies gave credit, so far as his own intentions were concerned, to the vessel, or would not have furnished them except on the belief that he was acquiring a lien for them."

Each of these libelants dealt directly with a member of the firm of Brainard Bros., knowing him to be one of a firm of contractors engaged in dredging operations in the Providence river and the owners of the dredge and scows. There is no evidence whatever to overcome the presumption of law that credit was given the owners, and not the vessel.

They contend, however, that M. F. Brainard was the master of the dredge, and cite a dictum from Stephenson v. The Francis (D. C.) 21 Fed. 715, 721:

"When an owner is also master, supplies furnished on his order will be deemed furnished to him in his character as captain rather than in his character as owner."

A proposition so broad cannot be accepted as a general rule of law. The case of Thomas v. Osborne, 19 How. 22, 29, 15 L. Ed. 534, does not support so broad a rule. In The St. Jago de Cuba, 9 Wheat. 409, 6 L. Ed. 122, it is said of a master:

"The necessities of commerce require that, when remote from his owner, he should be able to subject his owner's property to that liability without which it is reasonable to suppose he will not be able to pursue his owner's interest. But when the owner is present the reason ceases, and the contract is inferred to be with the owner himself on his ordinary responsibility, without a view to the vessel as the fund from which compensation is to be derived."

Were it proved in this case, as is not the fact, that the contracting partner was also the master of the scows and dredge, the libelants, knowing that they were dealing with a partner of a firm which owned the vessels, could not secretly elect to ignore the ownership and deal with him solely as a master. There is some degree of absurdity in the supposition that one who is dealing personally with a known owner, and a partner in a firm, which he can bind by an agreement for a lien on the vessel, should regard him as vested, not with the full power of an owner, but with merely a special authority arising from the presumed necessities of a vessel in her owner's absence.

The remarks of the learned judge in Stephenson v. The Francis, commenting on Thomas v. Osborne, relate to such facts as existed in the latter case. The rule quoted above from The St. Jago de Cuba was held in Thomas v. Osborne not to be one that could be safely extended to an owner pro hac vice in command of a vessel, because practically this special ownership leaves the enterprise subject to the same necessities as if the master were master merely, and not charterer, but the general rule was expressly recognized. In the three

cases before us it is apparent that M. F. Brainard was regarded as a contractor and a partner in the firm of Brainard Bros., rather than as having any of the duties or authority of a master in a foreign port.

These claims must therefore be disallowed.

The claim of G. N. Milliken et al. is for $750 for towage services rendered by their tug the Volunteer.

It appears that Brainard Bros., previous to the services for which a lien is claimed, contracted for the general services of the Volunteer at the rate of $1,200 per month, which included outside towing as well as inland towing; that while in the Providence river on this contract the Volunteer was engaged by M. F. Brainard to go to New York, and bring therefrom to Providence a general tow, comprising additions to the dredging plant to be used in the Providence river. It was not specified of what the tow was to consist.

It was agreed that the tug should receive the sum of $750 for this special service. I am of the opinion that upon the evidence these services were rendered upon the credit of Brainard Bros., and not of the Saratoga. The contract was an indivisible one, for a round sum, to tow a general tow, which, when made up, consisted of the dredge, two scows, and other material appertaining to the general dredging plant of the firm of Brainard Bros. It cannot be inferred that the whole sum was to be a lien upon the dredge. It further appears that the contract was made by the tug without any reference to any particular vessels, and that it was not known definitely of what the tow was to consist. It was understood that the trip was to bring on additions to the dredging plant already in the Providence river. There is no evidence showing any intention to apportion to any particular vessel a particular share of the expense. Considering the special character of the towage, the previous employment of the tug by Brainard Bros., and the indivisible character of the contract, I am led to the conclusion that this service did not give a lien on the Saratoga for either the whole or any part of the contract price. The Columbus, 14 C. C. A. 522, 67 Fed. 553.

This claim, therefore, must be disallowed.

The claim of William E. Walsh & Co., owners of the tug A. J. Hoole, which was engaged at the rate of $700 per month for general services in connection with the dredging plant, seems to present a state of facts so similar in essential features to that in The Columbus, above cited, that the decision of the court of appeals in that case should be regarded as decisive of this claim.

This claim will therefore be disallowed.

The claim of the Providence Steamboat Company for towage presents a different state of facts. Casual services were rendered on eight different days between May 12 and October 23, 1899, at the request of the persons in immediate charge of the dredge, without any general contract with the firm. This was ordinary towage service rendered by a general towage company.

Though the bills include towage of the scows as well as service to the dredge, I am not prepared to hold that the removal of scows from the dredge to the dumping ground, and their return thereto upon special exigencies, when it could not be done by the regular tugs in at-

tendance, was not a service rendered to the dredge, especially as it does not appear that there was any knowledge on the part of this claimant further than that those in charge of the dredge requested that the work be done.

While some possible doubts may exist upon questions involved in the allowance of these claims, yet, in the absence of objection by any of the parties to their allowance, I do not feel called upon to raise these questions, or, without the request of counsel for any of the parties, to attempt their solution.

This claim will be allowed for the amount of $206.

The claim of Walter A. Taft is for services as an inspector of dumping. The evidence as to this claim is somewhat vague. The libelant testified that he was an inspector for the city, hired by M. F. Brainard, at a fixed rate per day, to oversee the dredging and dumping. It appears also that he kept an account of the amount of work done by the dredge. Conceding that by a statute of the state of Rhode Island the dredging was to be done under inspection, and that Taft was one of a number of designated inspectors, and as such was employed to be upon the Saratoga, and looked for his pay to those engaged in the work of dredging, I can find no warrant for extending to a service of this character the protection of a maritime lien.

This claim is therefore disallowed.

The following claims, to which no objection has been made, and which are supported by sufficient proof, will be allowed: The crew: John Lundin, $57.40; Samuel Boyd, $31.54; George W. Tyler, $8.50; Thomas Martin, $59.66; William Ferrett, $60. Miscellaneous: Dennis Cronin, $377.87; Fuller Iron Works, $187.39; Charles Pay & Co., $146.07; W. P. Knickerbocker & Co., $98.16.

The following libels will be dismissed, with costs: The Brown Dry-Dock Company for failure to prosecute; the Providence Coal Company; the Providence Dry-Dock & Marine Railway Company; James A. Potter; G. N. Milliken et al.; William E. Walsh & Co.; Walter A. Taft.