## THE TRANSIT.

(District Court, E. D. Pennsylvania. August 20, 1914.)

No. 86.

1. MARITIME LIENS (§ 64*)—ENFORCEMENT—PLEADING—SUFFICIENCY OF ANSWER.

In a suit in admiralty to establish a maritime lien for repairs, an answer, denying the correctness of libelant's account, is insufficient, unless it specifies which of the charges are incorrect.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 102; Dec. Dig. § 64.*]

2. MARITIME LIENS (§ 64*)—REPAIRS AND SUPPLIES—CONSTRUCTION OF STATUTE.

Under Act June 23, 1910, c. 373, § 1, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1192), which gives a maritime lien for repairs made to a vessel on order of the owner, and expressly provides that it shall not be necessary to aver or prove that credit was given to the vessel, but further provides in section 4 that the right to a lien may be waived in order to plead a good waiver, it is not sufficient to allege that credit was not given to the vessel, but the answer must also allege that the debt was contracted solely on the personal credit of the owner.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 102; Dec. Dig. § 64.*]

In Admiralty. Suit by Henry F. Stockwell, receiver of John H. Dialogue and Son, against the steamtug Transit. On exceptions to answer for insufficiency. Sustained in part.

See, also, 210 Fed. 575.

This proceeding is on a libel in rem filed by the receiver in bankruptcy of John H. Dialogue & Son against the tug Transit. An answer was filed, to the sufficiency of which exceptions were taken, and an amended answer was put in. To this a number of exceptions have been interposed charging insufficiency.

A statement of all the facts required to present the points now requiring attention is as follows: John H. Dialogue & Son, who were shipbuilders, were requested by the owner of the Transit to make certain repairs to her. The contract which grew out of this will be referred to later. Some repairs had been made to the tug when Dialogue & Son went into bankruptcy. The work on the tug was continued by the receiver, but there was later a cessation of all work before the repairs were completed. The owner of the tug gave security and obtained possession of his property. The receiver was then authorized to libel the tug for the repair bill due the bankrupt. In consequence the present libel was filed. The only averment with which we are concerned is the simple statement on which the claim of the libelant proceeds, to the effect that certain repair work, consisting of labor and materials, were supplied to and on the credit of the tug, amounting in the aggregate to the sum of $2,085.06, at the request of the owner. An itemized statement of the repairs so made is attached, and a credit for $1,000 paid on account is allowed, and payment of the $1,085.06 balance demanded.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It should be noted here that the claim is by this part of the pleadings planked upon a simple quantum meruit for work and labor done and materials for the same provided.

The answer is in part a denial of the debt sued for, but is in substance a counterclaim which is set up by way of cross-libel. The full answer is restated in the amended answer so that the first answer may be ignored. A contract of repair is set up, consisting of an agreement to do specific things, and, in addition, "such other repairs necessary to put the said tug in proper seaworthy condition." No agreement on price is averred. The answer continues with a denial that Dialogue & Son did the work agreed by them to be done. It avers a dismantling of the tug and the careless scattering of the dismantled parts and cessation of work after very little had been done, and a final refusal to complete the contract. This is followed with the averment that the owner was obliged to have the removed parts replaced in the tug and the work completed elsewhere. There is also a blanket averment that the $2,085.06 is excessive, both in respect to the work done and the materials furnished and in the prices charged, but there is no specific averment of what work or material included in the bill was not done or furnished, nor are the proper prices set forth. There is, however, a general statement that an aggregate proper charge "would not exceed $1200." This is further followed with a denial of the $1,085.06 claimed being due, and a counterclaim is made for damages exceeding this amount. This claim for damages is based upon the statement that the repairs contracted to be made should have been made at a total cost of $2,500, and that the respondent had completed the contract at a cost to him of $2,000. Because of this, and that respondent had paid $1,000, a loss or damage of $500 is claimed. The cross-claim is further increased by the fact that the repairs contracted for should have been completed within 14 days, whereas because of delays interposed by the shipyard the tug was detained 16 days beyond the proper time. As the charter hire rate of the tug is $80 per day, a further loss and damage of $1,280 fell upon her owner. Further, small claims of $18 for coal and $29 for wharfage are made, which, deducting $90 admitted to be due libelant, makes the net counterclaim of respondent $1,737. There is also a denial that the repairs were made on the credit of the tug, and an averment that they were made solely on the personal credit of the owner.

Willard M. Harris, of Philadelphia, Pa., and Wilson & Carr, of Camden, N. J., for libelant.

J. Frank Staley and Lewis, Adler & Laws, all of Philadelphia, Pa., for respondent.

DICKINSON, District Judge (after stating the facts as above). This case comes before us now on exceptions to the amended answer. The general question presented is one of pleading, and we are in consequence now concerned only with the juridical history of the case. The facts necessary to be incorporated in this, however, in order that the conclusions reached may be vindicated, or even understood, are so many that a statement of them would extend this opinion to undue length. We, therefore, content ourselves with a very brief reference to the more salient facts, and file separately a more detailed statement. This may compel a repetition of some statements of fact, but none the less contributes to brevity.

[1] The libel is in effect simply an averment of a quantum meruit indebtedness for repair work done and materials supplied to this tug on the order of the master, with the added claim of a maritime lien under the act of Congress. If there is any defense to this claim other than an almost purely technical one, the respondent apparently does.

not know in what it consists. The prejudgment of the final decree to be entered is because of this favorable to the libelant. The respondent has already been accorded two opportunities to present the defense. The present right of the libelant is to have a decree, if one can now be made. The answer presents a threefold aspect. It consists in part of a general denial of the correctness of the bill of the libelant and of the right to a lien, and in part of a set-off or counterclaim presented in the form of a cross-libel. The first feature is introduced for the purpose of putting the libelant to his proofs. If the first question arose on a rule for judgment for want of a sufficient affidavit of defense, under the practice in the courts of Pennsylvania, the weight of authority would be with the libelant. Even there, however, there may be circumstances under which a general denial, coupled with an explanation of the absence of specific averments, may be sufficient to prevent judgment and put the plaintiff to his proofs. The question, moreover, does not technically so arise be·cause the conformity provision of the Revised Statutes does not extend to proceedings in admiralty. The question must be determined, therefore, by our own admiralty rules. The Pennsylvania decisions are not even persuasive because not altogether in point. The affidavit of defense law under the Pennsylvania statutes has a special purpose. At common law, averments in the narr., which were traversed by the defendant, must be supported by proofs. It was recognized that there were many cases to which there was no real defense. To administer speedy justice and to relieve the trial lists from congestion, the courts were empowered to enter judgment for the plaintiff unless a sworn defense was interposed. Such a defense must, of course, be a real defense, and as it was ruled there was no constitutional right of defendants in the way, the inevitable outcome was the present Pennsylvania practice. It is evident that a fair administration of this law would remit plaintiffs in all defended cases to a common-law trial. A strong tendency has, however, been manifested by the Pennsylvania courts to compel defendants to plead a full and complete defense by setting forth the facts which constituted it. Answers in admiralty practice are more in the nature of pleas than of affidavits of defense, and a nearer analogy is to be found in the principles of pleadings and the rules governing bills of particulars. The answer is insufficient, in that it does not state what of the work sued for was not done, or which of the charges made is excessive in price.

[2] The second question suggested is one of lien. This is a proceeding in rem. A maritime lien is given by Act Cong. June 23, 1910, 36 Stat. 604, where repairs are made to a vessel on the order of the owner. The act expressly provides that "it shall not be necessary to allege or prove that credit was given to the vessel." There is another provision in the fourth section of the act, to the effect that the repairer may waive his right of lien. The act was evidently passed to change the rule referred to in the case of The Iris, 100 Fed. 104, 40 C. C. A. 301, as laid down in previous cases. Since the act of 1910 the claim of a right of lien, it would seem, could only be met by the

averment of a waiver. A mere denial of the extension of credit to the vessel is surely not sufficient. Such denial, coupled with an averment that the debt had been contracted solely on the personal credit of the owner, would also seem to fall short of a defense, except for the ruling in Ely v. Murray, 200 Fed. 368, 118 C. C. A. 520. It is there ruled that the act does not "bar proof that whatever was furnished was furnished on the mere credit of the owner, and in no sense on the credit of the vessel." To give effect to this ruling we must hold a double averment of no credit to the vessel and sole credit to the owner personally to be a defense to the claim of lien. This necessarily sends the case to trial on this issue.

As to the third question suggested, the counterclaim is clearly invalid. The defense of a contract to do the whole work of repairing for the round sum of $2,500 fails because no such contract is averred. The demurrage claim cannot be allowed because no time limit is even mentioned, much less a contract to complete within any certain time.

With respect to the disposition to be made of those parts of the answer found to be insufficient, the case is not ripe for a decree under rules 23, 27, 28, and 29. The decree of pro confesso there provided for is not based upon the insufficiency of the answer, but upon the default of the respondent in complying with the order of the court following a finding of insufficiency of the answer. Rule 30, however, does apply in the alternative because, so far as the exceptions are allowed, the answer may be treated as if never filed and a decree pro confesso entered. Inasmuch as there must be a trial, the conclusions which the court has reached are stated, and the libelant may put the case in shape for trial, or may submit a decree dealing with the answer so far as found to be insufficient.

The conclusions are summarized as follows:

1. The answer, so far as it is a denial of the debt averred by libelant to be due, is insufficient in the respect that it should set forth what of the work claimed to have been done and what part of the materials claimed to have been furnished were not done and supplied, and should further set forth which of the charges are unreasonable and excessive in price and what the proper charge is.

2. The answer, so far as it avers the repairs to have been made solely on the personal credit of the owner and not on the credit of the vessel, is found to be sufficient.

3. The answer is found to be sufficient in respect to the averments of counterclaims of $18 for coal and $29 for towage.

4. The answer and cross-libel are found to be insufficient so far as respects the counterclaims for breach of contract.

5. The respondent is within the allegata and probata rule, and if the case is tried on the issues raised by the answer as filed, the evidence will be confined to a rebuttal of libelant's proofs of work done and materials furnished and the proper price to be charged therefor, and to proofs that the repairs were made wholly on the personal credit of the owner and in no sense on the credit of the vessel, and the cross-libel accompanying the answer will be dismissed as setting forth no cause of action.

6. Costs are to abide final decree.