WHITCOMB v. METROPOLITAN COAL CO.

(Circuit Court of Appeals, First Circuit. January 6, 1903.)

No. 439.

1. MARITIME LIENS—SUPPLIES FURNISHED UNDER CONTRACT—EVIDENCE TO ESTABLISH AGREEMENT FOR LIEN.

Where supplies are delivered to vessels under a written contract with the owner, a lien will not be presumed, and does not exist, unless upon proof it can be found that the minds of the parties met on a common understanding that such a lien should be created; and, when there was no such understanding at the time a contract was made for supplying coal during a specified time, a subsequent conversation between the parties during the term, in which the purchaser expressed the opinion that a lien existed, which was not unequivocally assented to by the seller, who demanded other security, does not create a lien for subsequent supplies which can be enforced against a mortgagee of the vessel.

Appeal from the District Court of the United States for the District of Massachusetts.

Walter Bates Farr (M. F. Dickinson, on the brief), for appellant.
Charles E. Hellier, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. In this case there was a written contract between the Metropolitan Coal Company and the Boston &

¶ 1. Maritime liens for supplies and services, see note to The George Dumois, 15 C. C. A. 679.

Maine Steamship Company, the owner of the City of Fitchburg, the vessel in question, whereby coal was to be furnished to its steamers at a given price per ton from May 18, 1901, to May 1, 1902. Coal was furnished under the contract from that date to August, 1901, without any claim or thought, so far as appears from the record, that a lien for coal supply was created upon the steamer in question. Indeed, it is not claimed "that the minds of the parties met on a common understanding that such a lien should be created." Neither is it claimed that at the outset the party who furnished the coal gave credit to the vessel, so far as its own intentions were concerned; and it seems to be agreed by the parties that no lien arose from the delivery of coal under the original contract.

In August, 1901, however, the coal company questioned the credit of the owner of the vessel, and refused to deliver coal to its vessels, and thereupon its agent, in company with its attorney, called on the treasurer of the company which owned the vessel in question, and it is claimed that a lien was then created by a conversation between the agents of the two interests, and that such lien exists as against the mortgagee of the vessel.

The doctrine of The Iris, 100 Fed. 104, 40 C. C. A. 301, and Cuddy v. Clement, 113 Fed. 454, 51 C. C. A. 288, is that, where supplies are furnished under a written contract, a lien will not be presumed and does not exist unless upon proof it can be found that the minds of the parties met on a common understanding that such a lien should be created. This means that the minds should meet in such a sense as to create an understanding or a contract that such a lien should exist for the purposes of security to the party who furnished the supplies.

We cannot look upon the conversation of August, 1901, as meeting the requirements of this rule. There was no mutual understanding amounting to a contract that coal should be further delivered in reliance upon a lien created at the moment of the conversation upon which the appellee relies.

Indeed, Mr. Lounsbury, the agent of the coal company, testifies, "We objected to having to go through a hearing before the courts in order to get our money, even if we had a lien." This was after he had questioned the credit of the owner of the vessel, and after Mr. Hellier, the attorney, and Mr. Teal, the treasurer, of the steamship company, had said to him that the coal company had nothing to worry about, and that the vessel was good for all supplies.

During the same conversation there was talk about a guaranty or further security, and that Mr. Nichols, the president of the steamship company, was a man of property, and would guaranty the account so that it would be paid promptly. It does not appear that the guaranty was furnished immediately, but Mr. Lounsbury, agent of the coal company, says, "We supplied them right along, pending an agreement more satisfactory to me," and the coal delivered was regularly billed and charged to the Boston & Maine Steamship Company.

The contemplated guaranty was shortly afterwards executed and delivered, and antedated to August 1, 1901, thus covering the delivery of coal in question.

It would seem, in view of the conversation and the acts of the parties that the situation should not be accepted as one creating a lien by contract, as the assertion of the treasurer of the company and its counsel was based upon the idea that a lien resulted by implication as a matter of law; and the agent of the coal company not only did not expressly adopt that view, but qualified his acquiescence therein by the remark that, even if a lien did exist, it would not be satisfactory.

In short, it would seem that the idea of creating and relying upon a lien by contract was not in the minds of either party, and the conversation at the most only presents an erroneous assertion of law, to which the coal company did not unqualifiedly commit itself.

A lien is for security and results by implication under proper conditions of necessity, or by contract where it is clear that the minds of the parties met for such a purpose. A lien being thus for security would not assert itself against a creditor to his loss and to the exclusion of his claim against the one upon whom the primary obligation rests. Neither will a lien intrude itself to destroy the security of a mortgagee unless it were one which would be upheld as between the original parties to the contract.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to dismiss the petition of the Metropolitan Coal Company, with costs against the same; and the appellant recovers his costs of appeal.

## On Rehearing.

### (March 11, 1903.)

PER CURIAM. The court having carefully considered the petition for rehearing and the brief in support thereof, and thereupon no judge who concurred in the judgment desiring a rehearing, the petition is denied, and a mandate will issue forthwith.