KIERMAN (UNITED STATES v.). See Case No. 15,529.

---

## Case No. 7,762.

### The KIERSAGE.

[2 Curt. 421.] [1]

Circuit Court, D. Maine. Sept Term, 1855.[2]

MARITIME LIENS—LOCAL LAW—MATERIALS FURNISHED—TWO VESSELS.

1. The local law of Maine does not give to material men, a lien on one vessel for the price of materials furnished for it and another vessel, though both are of the same size and model.—but only, in such case, for what was used in the vessel proceeded against.

[Cited in The Richard Busteed, Case No. 11,-764; The Young Sam, Id. 18,186; The James

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]
[2] [Reversing Case No. 7,634.]

H. Prentice, 36 Fed. 781; The J. R. Rumbell, 148 U. S. 1, 13 Sup. Ct. 499.]

[Cited in Perkins v. Pike, 42 Me. 148; Briggs v. A Light Boat, 89 Mass. 295; Foster v. The Richard Busteed, 100 Mass. 410; Jones v. Keen, 115 Mass. 181.]

2. Privileged liens are matters stricti juris. They cannot be extended argumentatively, from one case or person to another.

[Cited in The Larch, Case No. 8,085; The Sam Slick, Id. 12,282; Vandewater v. Mills, 19 How. (60 U. S.) 90; Insurance Co. of Pennsylvania v. Proceeds of Sale of Barge Waubaushene, 24 Fed. 559; The Barges 2 and 4, 58 Fed. 426.]

[Cited in Rogers v. Currier, 79 Mass. 134.]

[3. Cited in The Hiawatha, Case No. 6,453, and The Guiding Star, 9 Fed. 524, to the point that the lien of a domestic material man has priority over that of a mortgagee.]

[Appeal from the district court of the United States for the district of Maine.]

In admiralty.

Mr. Rand, for appellants.

Mr. Dana, contra.

CURTIS, Circuit Justice. This is an appeal from a decree of the district court in a suit in rem to establish the lien of material men on the hull of a new ship built in the district of Maine. The lien is claimed under the Revised Statutes of the state of Maine, c. 125, § 35, which enacts that, "Any ship carpenter, caulker, blacksmith, joiner, or other person, who shall perform labor or furnish materials, for or on account of any vessel building or standing on the stocks, or under repairs after having been launched, shall have a lien on such vessel for his wages or materials until four days after such vessel shall have been launched, or such repairs afterwards shall have been completed." It appears that certain shipbuilders contracted with Messrs. E. & E. Perkins to build this vessel for them. The builders were to furnish all the labor and materials and deliver the ship ready to receive the rigging, for an agreed price, to be paid in part by instalments during the progress of the work. The Messrs. Perkins were to and did receive a mortgage on the vessel, to secure them for these advances, and the first question is, whether the lien given by the statute to material men takes precedence of this mortgage.

In the case of The Young Mechanic [Case No. 18,180] I had occasion to consider the nature of this lien. I came to the conclusion that it was, in substance, a tacit hypothecation of the vessel, as security for the debt; that it is a jus in re, constituting an incumbrance on the property by operation of law, and there can be no doubt that it takes effect wholly irrespective of the state of the title to the vessel. Whether the vessel belongs to one or more persons—whether the title has been so divided that one is a special and another a general owner, and however it may be incumbered, the law gives the lien on the thing.

The mortgagees can have no claim to be preferred over the lien holder, because of their priority in time; for their interest in the vessel is as much subject to the statute lien, as the interest of any other party. It is not in the power of the owner, by his voluntary act, to withdraw any part of the title from the operation of the lien; if he could he might altogether defeat it. The statute gives no lien to those who advance or lend money to be employed in building the vessel, and if they were allowed such a lien, as under some circumstances they were allowed a privilege under the Roman law and an hypothecation under the modern civil laws, still it would not follow that they would stand on terms of equality with laborers and material men. This case is put and resolved in the 32d chapter of the Ordinance of Peter IV. of Aragon, (1343,) contained in the common editions of the Consulado, and usually cited as part of that work, but shown by Pardessus not to belong to it. 5 Pardessus' Col. de Lois Mar. p. 389. "If a vessel of whatever size, be sold at the instance of a creditor, before it has been launched, or before it has made a voyage, the workmen and material men shall be preferred to all other creditors, even to those who have lent money on a written title to the vessel, to be employed in its construction." See, also, The Dowthorpe, 2 W. Rob. Adm. 79.

The next question which has been argued on this appeal arises out of the following facts. The builders of this vessel were building another of the same tonnage and model in the same yard, at the same time while this one was constructing. The libellants furnished materials for the two vessels without distinguishing between them. The district court held that both vessels were hypothecated for the price of all the materials furnished; and that the creditors might resort to either or both to compel payment of the whole amount. [Case No. 7,634.] I am unable to concur in so much of this opinion as holds that the statute gave a lien on both vessels for all the materials furnished, without regard to their use on one or the other. The statute in terms, for materials furnished for or on account of any vessel, gives the creditor a lien on such vessel for his materials. These terms do not give a lien on one vessel for materials furnished for or on account of another vessel, nor for or on account of it and another. The natural meaning of the words is, that for the price of materials furnished for a particular vessel, the creditor shall have a lien on that vessel. I do not think myself at liberty, to give what is called a liberal construction to these terms, so as to embrace in them a case they do not describe. For I understand it to be a settled rule, that privileged liens constituting a jus in re, accompanying the property into the hands of bonâ fide purchasers,

and operating to the prejudice of general creditors, are matters stricti juris, which cannot be extended from one case to another argumentatively, or by analogy or inference. They must be given by the law itself, and the case must be found described in the law. Privilegia, cum sunt stricti juris, nec extendi possunt de re ad rem, nec de persona ad personam. 1 Boul. P. Dr. Com. p. 36; Emerigon, Contrat a la Grosse, c. 12, § 1. Even when the court may be of opinion, that the law might be beneficially extended to include cases not described in its terms, it must be left to the legislative power so to extend it. This is even expressed by Pardessus, (3 Droit Comm. pp. 597, 598,) when reasoning on the policy of allowing a privilege for premiums of insurance. "Analogy cannot afford a decisive argument, because privileges are of strict right. They are an exception to the rule by which all creditors have equal rights in the property of their debtor, and an exception should be declared and described in express words; we cannot arrive at it by reasoning from one case to another."

Nor does it seem to me that it would be expedient to embrace such cases as this. If a lien were allowed on one vessel, for materials supplied for another, it would have a direct and strong tendency to deprive those who had supplied labor or materials for the first, of the benefit of their lien. While the privileged claims do not exceed the price of that part of the labor and materials obtained on credit, for or on account of a particular vessel, that vessel will, with rare exceptions, afford adequate security. But it would cease to do so, if claims to an unlimited amount, for materials furnished for any number of vessels could be brought in, and if the libellant may claim for materials furnished for two vessels of the same size, as in this case, what is to prevent him from making a similar claim, when the vessels are more numerous and are of different sizes? At the same time, I think that where materials are furnished for two specific vessels, though the original contract does not appropriate them specifically to either, yet when they are afterwards appropriated, they may properly be considered as furnished for that vessel, in the construction of which they are used. The effect of such a contract is, to enable the builder to elect, to which of the two vessels he will appropriate them. When he has made that election and actually appropriated them or some part of them to one vessel, I can see no sound reason, why it may not be said with truth, that they were furnished for and on account of that vessel, and so, that the case is within the terms of the law.

My opinion therefore is, that the libellants have a lien for the price of such of their materials, as were appropriated to the Kiersage. The decree of the district court is

reversed, and the case must be sent to an assessor to inquire what materials purchased of the libellants for the two vessels were used in the construction of the Kiersage; and for the price thereof the vessel is liable.