## LIEN ON WATER-CRAFT.

[Circuit Court of Cuyahoga County.]

ROBERT A. SHAILER v. MARK H. HANLON.

Decided, February 29, 1904.

*Water-Craft—State Courts have Jurisdiction over—Where the Constitutionality of a State Statute is Involved—May Direct to Whom Balance of Purchase Money shall be Paid—Ohio Statute Provides a Lien for Supplies—Coal Furnished in Bulk for the Vessel and Other Purposes.*

1. A state court has jurisdiction to construe a statute of the state relating to liens on water-craft, and where the balance of purchase money for the boat is brought into court by the party owning it, the court has the jurisdiction to direct to whom it shall be paid.
2. It is not necessary under the Ohio statute (Section 5880) for one furnishing supplies to a vessel with the understanding on the part of both the vendor and the vendee that such supplies were furnished on the credit of the boat, and unless the evidence shows that the supplies were furnished upon the credit of the owner or some other person, one from whom such supplies were obtained is entitled to a lien.
3. Where coal is furnished to a vessel in bulk, a part to be used on the vessel and a part to be unloaded at a designated place for a known use, a lien will attach to the vessel for the coal used in its navigation.

MARVIN, J.; HALE, J., and WINCH, J., concur.

Error to court of common pleas.

The original action was brought by Robert A. Shailer against the Standard Contracting Company, a corporation, to recover a balance due upon the purchase price of the steamer George T. Burroughs, which was bought by the defendant from the plaintiff. By the contract of sale the plaintiff guaranteed said steamer to be free of all liens. The amount remaining unpaid upon the purchase price is $950. The defendant in error, Mark H. Hanlon, was brought into the case by interpleader, the original defendant, by one of its officers, filing the proper affidavit that said Hanlon claimed a lien upon the steamer, and said Hanlon was thereupon made a party in the case and filed

his answer, setting up that he had a lien and the nature thereof. The steamer was used on Lake Erie in carrying supplies from the dock at the city of Cleveland, Ohio, to what is known as the "crib," some five miles out in the lake from the dock. The lien claimed by Hanlon grows out. of the following state of facts:

Hanlon was a coal-dealer in the city of Cleveland, and for a series of years prior to the year 1901 had furnished coal which was taken upon this steamer and used in part for the navigation of the vessel,. and in part was unloaded at the "crib" and used there. Up to the year 1901 the coal so delivered by Hanlon to the steamer was paid for by the owner or charterer of the steamer. The steamer, during the greater part of that time, was owned by the. Shailer & Schniglau Company, but on or about the 20th of October, 1901, the boat was sold by that company to the plaintiff. After such sale the boat was chartered by said Shailer & Schniglau Company from the plaintiff, and was used in the same way as it had thereto-coal to the boat for the season of 1901, and Hanlon then gave fore been used. The owner of the boat, or the agent, made inquiry of Hanlon as to the price at which he would furnish the price at $1.95 per ton. Beyond this, no contract was ever entered into between the parties, except that from time to time, during the season of 1901, the master of the boat, and sometimes some other representative of the parties operating the boat, ordered coal to be delivered to the boat by Hanlon, and this was accordingly done. The coal furnished by Hanlon to the boat during the season of 1901 amounted to about 1,200 tons. At the time that Hanlon first began furnishing coal to this boat it was charged by him directly to the steamer, but during the season of 1901 it was charged to the Shailer & Schniglau Company, per Steamer George T. Burroughs. Of the coal thus delivered to the boat by Hanlon 225 tons were used for the purpose of navigating the boat. The balance was unloaded at the "crib" for other purposes. No part of the coal furnished for the season of 1901 was paid for. No distinction or separation was made at the time the coal was delivered between that which was to be used for the navigation of the boat

and that which was to be delivered at the "crib." The coal was simply delivered in bulk, and from that bulk such part was used for this navigation as was necessary. Hanlon claims a lien for the coal used in navigating the boat, under Section 5880 of the Revised Statutes of Ohio, which reads:

"Any steamer, boat or other water-craft navigating the waters within or bordering upon this state shall be liable, and such liability shall be a lien thereon for all debts contracted on account thereof by the master, owner, steward, consignee, or other agent for materials, supplies or labor in the building, repairing, furnishing or equipping of the same." * * *

The original defendant comes into court and admits the indebtedness on account of the purchase-price of the boat, and tenders payment to the party who shall be found to be entitled to such payment. The court of common pleas held that Hanlon had a lien for the 225 tons used in navigating the boat, at the price of $1.95 per ton, as fixed as the value of the coal delivered, and ordered that the value of this amount at this price should be paid to Hanlon out of the money due from the original defendants.

On the part of the plaintiff in error it is claimed, first, that the court was without jurisdiction to determine this lien and direct the payment of the money to Hanlon, and, further, that even if the court had jurisdiction, the facts do not entitle Hanlon to a lien.

As to the jurisdiction. It is settled that the liens upon water-craft provided for in the state statutes can not be made the basis of an action in the state courts, but that the federal courts, having admiralty jurisdiction, have the exclusive jurisdiction in actions brought to enforce the lien. But that is not the present case. The boat has been sold. The money due upon the purchase price is brought into the state court. A construction of a statute of the state becomes necessary. We hold that the state court has the jurisdiction to construe the statute and that the money, being brought to the court by the party owing it, when the court has construed the statute it has the jurisdiction to direct to whom it shall be paid. Otherwise we should have this situation: That Hanlon was called upon to plead in this case.

Being so called upon, he must either set up his claim or ignore the court and commence an action in the federal court. If he had failed to assert his rights in the state court, the court might have proceeded to direct the money to be paid to the plaintiff, even though a part of it were due to Hanlon, and the original defendant, being under the jurisdiction of the state court, would be bound to obey the order of the court, and then when Hanlon brought his suit in the federal court the original defendant might be required to pay again the amount of Hanlon's lien, if it should be determined that he had a lien.

Though this question is not free from doubt, it seems to us that the better reasoning is that the court which has the parties before it and the money under its control, and having jurisdiction for determining the statute, should have the authority to direct to whom such money should be paid. We hold, therefore, that the court of common pleas had the jurisdiction to determine the rights of the parties in this case.

There remains the question of whether Hanlon, under the facts, was entitled to a lien. Statutes similar to our own are in force in most, if not all, of the states. They were enacted because, under the admiralty laws, liens were given only for supplies furnished to a vessel in a foreign port, but these statutes provide for many things not provided for by the admiralty laws, and whether or not it would be necessary, in order to hold a lien under admiralty law, for one furnishing supplies to a vessel to show affirmatively that the contract for supplies was made with the understanding on the part of both the vendor and vendee that such supplies were furnished on the credit of the boat, we hold that it is not necessary under our statute.

It is said, in the case of *The Lulu*, decided by the Supreme Court of the United States, 10 Wallace, 192:

"Experience shows that ships and vessels employed in commerce and navigation often need repairs and supplies in course of a voyage, when the owners of the same are absent, and at times and places when and where the master may be without funds, and may find it impracticable to communicate seasonably with the owners of the vessel upon the subject. Contracts for repairs and supplies, under such circumstances, may be made by the master to enable the vessel to proceed on her voyage, and

if the repairs and supplies were necessary for that purpose, and were made and furnished to a foreign vessel or to a vessel of the United States in a port other than a port of the state where the vessel belongs, the *prima facie* presumption is that the repairs and supplies were made and furnished on the credit of the vessel unless the contrary appears from the evidence in the case.''

The syllabus in the same case reads:

'' * * * in the case of a lien asserted against a vessel supplied or repaired in a foreign port, necessity for credit must be presumed where it appears that the repairs and supplies for which a lien is set up, were ordered by the master, and that they were necessary for the ship when lying in port, or to fit her for an intended voyage, unless it is shown that the master had funds, or that the owners had sufficient credit, and that the repairer, furnisher, or lender knew these facts, or one of them, or that such facts and circumstances were known to them as were sufficient to put them on inquiry, and to show that if they had used due diligence they would have ascertained that the master was not authorized to obtain any such relief on the credit of the vessel.''

We hold that, under our statute providing for a lien for supplies furnished ''on account'' of such vessel is sufficient to give the person furnishing such supplies a lien, unless the evidence shows such supplies were furnished upon the credit of the owner, charterer, or some other person, and not upon the credit of the vessel.

Coming, then, to the question of whether because of the fact that the coal for which this lien is claimed was furnished in bulk with other coal, no lien could be upheld, we hold that to the extent that this coal was used for the navigation of the vessel Hanlon was entitled to his lien. We think this holding is justified by the holding of the Circuit Court of the United States for the First Circuit, in the case of *The Kiersage,* 2 Curtis Rep., 421. In that case, a statute of the state of Maine was being considered. The facts were that certain parties furnished materials for the building of two vessels of the same pattern and tonnage, in the same way, in the same yard, at the same time. A claim was made that the parties furnishing these materials were entitled to a lien on each vessel for the materials furnished for both, and the court say upon this question, at page 423:

"The next question which has been argued in this appeal arose out of the following facts: The builders of this vessel were building another of the same tonnage and model in the same yard, at the same time while this one was constructing. The libellants furnished materials for the two vessels without distinguishing between them."

And on page 425, this language is used in the opinion:

"At the same time, I think that where materials are furnished for two specific vessels though the original contract does not appropriate them specifically to either, yet when they are afterwards appropriated, they may properly be considered as furnished for that vessel in the construction of which they are used."

As bearing upon the questions arising in this case, attention is called to the case of *The H. B. Foster,* 3 Ware, 165.

Entertaining the views expressed in this opinion, the judgment of the court of common pleas is affirmed.

*Goulder, Holding & Masten,* for plaintiff in error.

*Russell & Eichelberger,* for defendant in error.